ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| METRO SANTURCE, INC. H/N/C HOSPITAL PAVIA SANTURCE Y OTROS<br><br>Recurrida<br><br>v.<br><br>TELEHELTH SERVICES, INC. Y OTROS<br><br>Peticionaria | **TA2025CE00450** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm.: SJ2025CV01434<br><br>Sobre: Cobro de Dinero; Incumplimiento de Contrato; Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 9 de octubre de 2025.

Comparece ante nos Telehealth Services, Inc. (Telehealth o parte peticionaria) el 15 de septiembre de 2025, mediante el presente auto de *Certiorari* y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan el 15 de agosto de 2025. En la aludida *Resolución*, el foro de instancia declaró Con Lugar la *Solicitud de Remedios Provisionales en Aseguramiento de Sentencia* presentada por Metro Santurce, Inc. h/n/c Hospital Pavía Santurce; Metrohealth, Inc. h/n/c Hospital Metropolitano; San Francisco Health System, Inc. h/n/c Hospital San Francisco; Doctor Susoni Health Community Service Corporation h/n/c Hospital Pavía Arecibo; Hospital Doctor Susoni, Inc. h/n/c Hospital Metropolitano Doctor Susoni; Metro Mayaguez, Inc. h/n/c Hospital Perea; Southwest Health Corporation h/n/c Hospital Metropolitano de San Germán; Yauco Healthcare

Corporation h/n/c Hospital Pavía Yauco; Metro Ponce, Inc. h/n/c Hospital Metropolitano Dr. Pila (en adelante y en conjunto, los Hospitales o parte recurrida) por la cantidad de $404,818.85. Por tanto, el foro primario dictó una orden para que se embargaran de forma provisional, dinero en efectivo, acciones, bonos o valores de Telehealth.

Por los fundamentos que expondremos a continuación, se **DENIEGA** expedir el auto discrecional de *certiorari*.

**I.**

Los Hospitales presentaron la demanda que inicia este pleito el 21 de febrero de 2025, sobre cobro de dinero, incumplimiento de contratos y daños y perjuicios contra Telehealth.[1] En esencia, alegaron que contrataron los servicios de Telehealth para que este fuera el proveedor exclusivo del servicio de televisores encontrados en las habitaciones y áreas de espera de los diferentes edificios. Adujeron que, a la fecha del vencimiento de los contratos entre las partes, Telehealth continuó brindando sus servicios a los hospitales ininterrumpidamente por varios años. Alegaron que, los contratos suscritos entre las partes proveían dos componentes de pago, la renta mensual y el cincuenta por ciento de las ventas sobre los televisores alquilados diariamente. Arguyeron que los pagos de la renta de Telehealth a los hospitales vencía mensualmente y que el equipo de televisores era de propiedad de Telehealth. Alegaron que, el 10 de febrero de 2025, recibieron una comunicación por parte de Telehealth en donde notificaba que estaría cerrando las operaciones y

---

[1] Demanda, entrada núm. 1 del caso núm. SJ2025CV01434, en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

cesaría sus servicios el 14 de febrero del mismo año. Arguyeron que Telehealth expresó, en su misiva, que la decisión de cerrar sus operaciones era resultado de cambios económicos que han hecho imposible continuar con sus operaciones.

Del mismo modo, los Hospitales adujeron que en la comunicación cursada por Telehealth, este último indicó que liquidarán todos los equipos pertenecientes a este que se encontraban en las instalaciones de los hospitales en dación de pago. Alegaron que conforme los contratos celebrados entre las partes, el sistema y las cámaras de seguridad pasarían a ser de los hospitales. Arguyeron que, el 13 de febrero de 2025, le cursaron una comunicación a Telehealth en la cual cuestionaron el balance de la deuda y objetaron que esta fuese aplicada al inventario de equipo en dación en pago. De la misma forma, alegaron que le solicitaron a Telehealth un término de treinta días para contratar a otro suplido de servicio de televisores y le extendieron una invitación a reunirse para así reconciliar la deuda y coordinar su pago. Adujeron que a raíz de las comunicaciones cursadas por Telehealth, este último le adeudaba la cantidad de $416,283.42. Por tal razón, y debido a que Telehealth canceló el contrato de forma irrazonable cuatro días antes de la efectividad de la tácita reconducción, solicitó al foro de instancia que ordenará a Telehealth a pagarle a los hospitales la suma adeudada de $933,084.19, entre otras cosas.

En respuesta, el 11 de junio de 2025, Telehealth presentó su *Contestación a Demanda y Reconvención*.[2] En

---

[2] Contestación a Demanda y Reconvención, entrada núm. 28 del caso núm. SJ2025CV01434, en el SUMAC.

síntesis, expuso sus alegaciones responsivas y defensas afirmativas, en especificó, alegó de manera afirmativa que la deuda reclamada por la parte recurrida estaba prescrita. De la misma forma, adujo que la deuda reclamada por los Hospitales no estaba vencida, líquida o exigible porque no había sido reconciliada y respondía a un estimado.

En su reconvención, la parte peticionaria alegó, que luego del vencimiento de los contratos, ofreció los servicios de alquiler de televisores a los pacientes de los hospitales con su anuencia y colaboración. Adujo que los hospitales se beneficiaron económicamente del acuerdo verbal entre ambos sin realizar ajustes proporcionales al número de camas que estaban disponibles y sin permitir la dación en pago por los equipos que fueron provistos. Arguyó que a pesar de que los hospitales no aceptaron los equipos como dación en pago, estos continuaron utilizándolos y lucrándose de su uso sin pagar compensación alguna a Telehealth. Como resultado de esto, la parte peticionaria solicitó la cantidad de $500,000.00 en concepto de daños y perjuicios.

Luego, el 3 de julio de 2025 los Hospitales presentaron una *Solicitud de Remedios Provisionales en Aseguramiento de Sentencia*.[3] En el referido escrito, la parte recurrida solicitó el remedio de aseguramiento de sentencia fundándose en que la cesación de operaciones de Telehealth por razones económicas, con la ausencia de información sobre los bienes activos o pasivos actuales, constituía un riesgo real e inminente a que si se dictase

---

[3] Solicitud de Remedios Provisionales en Aseguramiento de Sentencia, entrada núm. 34 del caso núm. SJ2025CV01434, en el SUMAC.

una sentencia a favor de los hospitales, sería ineficaz satisfacerla por la falta de bienes del demandado. Por tal razón, solicitó el embargo sobre el dinero efectivo, acciones, bonos o valores de Telehealth por la cantidad de $933,084.19.

El mismo día, el Tribunal de Primera Instancia, emitió una *Orden de Señalamiento de Remedio Provisional*.[4] En la aludida orden, el foro de instancia señaló una vista para el 16 de julio de 2025 para atender la petición de remedio provisional presentada por los recurridos y ordenó a las partes a presentar en o antes del 11 de julio una moción conjunta con la prueba que se utilizaría en la vista.

En desacuerdo, el 8 de julio de 2025, Telehealth presentó una *Moción de Reconsideración y Oposición a Solicitud de Remedios Provisionales en Aseguramiento de Sentencia y Solicitud de Descubrimiento de Prueba*.[5] En esencia, solicitó que se denegara la solicitud de remedios provisionales presentada por la parte recurrida, pues alegó que la deuda reclamada no era liquida, vencida ni exigible, ya que se encontraba en controversia. Del mismo modo, adujo que tenía derecho a descubrir prueba para sustentar sus alegaciones en contra de la solicitud de remedios provisionales presentada por la parte recurrida.

El 9 de julio de 2025, el Tribunal de Primera Instancia emitió una *Orden* mediante la cual le requirió

---

[4] Orden de Señalamiento de Remedio Provisional, entrada núm. 36 del caso núm. SJ2025CV01434, en el SUMAC.
[5] Moción de Reconsideración y Oposición a Solicitud de Remedios Provisionales en Aseguramiento de Sentencia y Solicitud de Descubrimiento de Prueba, entrada núm. 37 del caso núm. SJ2025CV01434, en el SUMAC.

a los Hospitales presentar su posición respecto a el escrito del demandado.[6]

El 11 de julio de 2025, los Hospitales presentaron su *Oposición a Moción de Reconsideración y Réplica a Oposición a Solicitud de Remedios Provisionales en Aseguramiento de Sentencia*.[7] En síntesis, alegaron que la parte peticionaria tendrá la oportunidad de presentar su posición sobre los remedios provisionales solicitados en la vista pautada.

Así las cosas, y luego de la celebración de la vista el 16 de junio de 2025, el Tribunal de Primera Instancia emitió unas *Resolución* mediante la cual declaró Con Lugar la *Solicitud de Remedios Provisionales en Aseguramiento de Sentencia* presentada por los Hospitales por la cantidad de $404,818.85. El foro *a quo* emitió las siguientes determinaciones de hechos:

> 1. La Parte Demandante son hospitales que se ubican en distintas partes de Puerto Rico. Véase, SUMAC Núm. 1, Demanda, ¶ 13 y SUMAC Núm. 28, Contestación a Demanda y Reconvención, ¶13.
>
> 2. La Parte Demandante y la Parte Demandada suscribieron varios contratos titulados "Contrato Concesión de Servicio de Televisores" para varios hospitales. Véase, SUMAC Núm. 39, Exhibits 1 al 8.
>
> 3. El 10 de febrero de 2025, los Hospitales recibieron una misiva de Telehealth, notificándoles que ésta última cerraba operaciones y cesaría sus servicios el 14 de febrero de 2025. Véase, SUMAC Núm. 1, Demanda, ¶ 27 y SUMAC Núm. 28, Contestación a Demanda y Reconvención, ¶ 27.
>
> 4. Las cartas que la Parte Demandada envió a la Parte Demandante establecen que "se notifica que Telehealth cerrará sus operaciones efectivo el 14 de febrero de 2025, … Esta decisión es el resultado de los cambios económicos que ha hecho imposible la continuidad de sus operaciones". Véase, SUMAC

---

[6] Orden, entrada núm. 38 del caso núm. SJ2025CV01434, en el SUMAC.
[7] Oposición a Moción de Reconsideración y Réplica a Oposición a Solicitud de Remedios Provisionales en Aseguramiento de Sentencia, entrada núm. 41 del caso núm. SJ2025CV01434, en el SUMAC.

Núm. 1, Demanda, ¶ 28 y SUMAC Núm. 28, Contestación a Demanda y Reconvención, ¶ 28.

5. En las cartas del 10 de febrero de 2025, la Parte Demandada le ofreció en dación en pago a la Parte Demandante un equipo propiedad de la Parte Demandada. Véase, Contestación a Demanda y Reconvención, ¶¶ 29, 35 y 36.

6. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Metropolitano Dr. Pila, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Metropolitano Dr. Pila … la suma de $83,753.32". Véase, SUMAC Núm. 39, Identificación A de la Parte Demandante.

7. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Metropolitano Dr. Susoni, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Metropolitano Dr. Susoni … la suma de $67,362.26". Véase, SUMAC Núm. 39, Identificación B de la Parte Demandante.

8. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Pavía Arecibo, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Pavía Arecibo … la suma de $93,616.80". Véase, SUMAC Núm. 39, Identificación C de la Parte Demandante.

9. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Perea, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Perea … la suma de $49,296.84". Véase, SUMAC Núm. 39, Identificación F, Parte Demandante.

10. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Metropolitano de San Germán, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Metropolitano de San Germán … la suma de $25,618.74". Véase, SUMAC Núm. 39, Identificación G de la Parte Demandante.

11. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Pavía Santurce, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Pavía Santurce … la suma de $59,500.00". Véase, SUMAC Núm. 39, Identificación I de la Parte Demandante.

12. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Metropolitano, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Metropolitano … la suma de $78.55". Véase, SUMAC Núm. 39, Identificación J de la Parte Demandante.

13. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital Pavía Yauco, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital Pavía Yauco … la suma de $8,404.67". Véase, SUMAC Núm. 39, Identificación L de la Parte Demandante.

14. En la carta del 10 de febrero de 2025, que la Parte Demandada, por conducto de su representación legal, le cursó a la Parte Demandante, relacionada con el Hospital San Francisco, expresó lo siguiente: "[l]a contabilidad de Telehealth indica que le adeudan en renta al Hospital San Francisco … la suma de $17,186.67". Véase, SUMAC Núm. 39, Identificación P de la Parte Demandante.

15. Según las cartas enviadas el 10 de febrero de 2025 por la Parte Demandada a la Parte Demandante, el total adeudado reconocido por la Parte Demandada es el siguiente:

| HOSPITAL | CUANTÍA | Moción Conjunta sobre Prueba a Presentarse durante la Vista de Remedios Provisionales |
|---|---|---|
|  |  |  |

| | | |
|---|---|---|
| HOSPITAL METROPOLITANO DR. PILA | $83,753.32 | Id. A. |
| HOSPITAL METROPOLITANO DR. SUSONI | $67,363.26 | Id. B. |
| HOSPITAL PAVÍA ARECIBO | $93,616.80 | Id. C |
| HOSPITAL PEREA | $49,296.84 | Id. F |
| HOSPITAL METROPOLITANO SAN GERMÁN | $25,618.74 | Id. G |
| HOSPITAL PAVÍA SANTURCE | $59,500.00 | Id. I |
| HOSPITAL METROPOLITANO RÍO PIEDRAS | $78.55 | Id. J |
| HOSPITAL PAVÍA YAUCO | $8,404.67 | Id. L |
| HOSPITAL SAN FRANCISCO | $17,186.67 | Id. P |
| | | |
| TOTAL: | $404,818.85 | |

El Tribunal de Primera Instancia razonó que después de la vista de remedio provisional, quedó establecido que no había controversia que existía una circunstancia extraordinaria que ameritaba la concesión de un remedio provisional a favor de los Hospitales porque Telehealth cerró sus operaciones debido a los cambios económicos y

existía una probabilidad de que los hospitales pudieran prevalecer mediante prueba documental fehaciente que demostrase que la deuda era líquida, vencida y exigible, pues Telehealth reconoció parte de la deuda mediante las cartas de cierre que le curso a los recurridos y mediante el ofrecimiento en dación en pago. Por ende, el foro primario consideró justo autorizar el embrago de los bienes pertenecientes a Telehealth para asegurar la cantidad $404,818.85.

Inconforme, el 15 de septiembre de 2025, Telehealth acude ante nos mediante el presente auto de *certiorari* y señaló la comisión del siguiente error:

> ERRÓ EL TPI AL EXPEDIR UN REMEDIO PROVISIONAL SIN CELEBRAR UNA VISTA EN SUS MÉRITOS Y AL SUSTENTAR SU DECISIÓN EN UNA OFERTA TRANSACCIONAL QUE ES INADMISIBLE BAJO LA REGLA 408 DE LAS REGLAS DE EVIENCIA.

El 29 de septiembre de 2025, los Hospitales presentaron su *Oposición a Recurso de Certiorari*.

Contando con la comparecencia de ambas partes, procedemos a resolver.

## II.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari*, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.*, 202 DPR 478, 486 (2019). Dispone que, el recurso de *certiorari* para revisar

resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd*.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción. *Torres González v. Zaragosa Meléndez*, 211 DPR 821, 849 (2023).

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

### III.

La parte peticionaria nos plantea que el Tribunal de Primera Instancia erró al expedir un remedio provisional sin celebrar una vista en sus méritos y al

sustentar su decisión en una oferta transaccional que es inadmisible bajo la Regla 408 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 408.

Luego de examinar la totalidad del expediente ante nuestra consideración, y en virtud de lo dispuesto en la Regla 52.1 de las Reglas de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento de este Tribunal, *supra*, concluimos que no se justifica nuestra intervención en esta etapa del procedimiento. El estudio del legajo judicial y la *Resolución* ante nuestra consideración, no nos muestra que esté presente alguno de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es decir, la decisión del foro de instancia no muestra prejuicio, parcialidad o error craso y manifiesto. Por lo tanto, procedemos a denegar la expedición del recurso de *certiorari* para que continúen los procedimientos ante el Tribunal de Primera Instancia.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones